**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

**HARRY W. SMITH,**

    Plaintiff,

v.                                                                       Civil Action No. **3:23CV317 (RCY)**

**WARDEN MILLER,** *et al.***,**

    Defendants.

**MEMORANDUM OPINION**

Harry W. Smith, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The matter is proceeding on Smith's Second Particularized Complaint (hereinafter simply "Complaint"). ECF No. 14.[2] The following claims remain before the Court:

    Claim 1:     Warden Miller violated Smith's right to the free exercise of his religion "by not allowing [Smith] to either carry his meals to his housing unit or have them delivered to avoid the spiritually unclean environment of the dining area." Compl. 8.

---

[1] The statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the spelling of Defendants' names and the titles of the Defendants from Defendants' Motion to Dismiss. ECF No. 31, at 1. Officer Moody, Sgt. Barnes, and Lt. Williams have not made an appearance. By Memorandum Opinion and Order entered on March 18, 2025, the Court dismissed Claims 5, 6, 7, and 9. ECF Nos. 52, 53.

    The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, punctuation, and capitalization in the quotations from the parties' submissions. The Court omits any emphases in the quotations from the parties' submissions.

| | |
|---|---|
| Claim 2: | Assistant Warden Oates violated Smith's right to the free exercise of his religion "by not allowing [Smith] to either carry his meals to his housing unit or have them delivered." *Id.* |
| Claim 3: | Defendants Walker, Williams, Epps, Artis, Sesay, Vaughan, Barnes-Curry, Holloway, Barnes, and Moody violated Smith's right to the free exercise of his religion by not allowing Smith to carry his meals out of the dining hall. *Id.* at 9. |
| Claim 4: | Defendants Gregg and Engelke violated Smith's right to the free exercise of his religion by sending food for Passover that was not Kosher. *Id.* |
| Claim 8: | Defendants Miller and Oates violated Smith's right under the Religious Land Use and Institutionalized Person's Act ("RLUIPA") by not allowing Smith to carry his meals to his housing unit. *Id.* at 11. |

Warden Miller, Assistant Warden Oates, Captain Epps, Major Artis, Officer Walker, Lt. Sesay, Sgt. D. Vaughan, Sgt. Barnes-Curry, Officer Holloway, J. Deberry, D. Hudson, Mr. Engelke, Natarsha Gregg, and J. Harris moved for summary judgment. Mot. Summ. J., ECF No. 55. These Defendants moved for the dismissal of Claims 1, 2, 3, and 8 for failure to exhaust administrative remedies, and for the dismissal of Claim 4 on the ground that it lacks merit. Mem. Supp. Summ. J., ECF No. 56. Smith responded on September 11, 2025. (ECF No. 63.)

## I. RELEVANT PROCEDURAL HISTORY

By Memorandum Order entered on October 3, 2025, the Court concluded Claim 4 was subject to dismissal for lack of exhaustion. ECF No. 64. Specifically, the Court noted:

> "Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court . . . . If exhaustion was not completed at the time of filing, dismissal is mandatory." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). "[E]xhaustion pendente lite undermines the objectives of section 1997e(a) and . . . the language of section 1997e(a) clearly contemplates exhaustion prior to the commencement of the action as an indispensable requirement, thus requiring outright dismissal of such actions. . . ." *Id.* at 628 (citing *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002); *Medina–Claudio v. Rodriguez–Mateo*, 292 F.3d 31, 36 (1st Cir. 2002); *Neal v. Goord*, 267 F.3d 116, 121–22 (2d Cir. 2001); *Jackson v. Dist. of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.

> 1999); *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 538 (7th Cir. 1999)).
>
> Smith filed this action, at the latest, on May 10, 2023. (ECF No. 1.)[3] Here, in arguing over whether Smith has satisfied the exhaustion requirement, Defendants and Smith point to grievances and or appeals that were submitted after May 10, 2023. Under the law, these materials cannot satisfy the exhaustion requirement. *See id.* (citations omitted). Further, it does not appear that Smith exhausted his administrative remedies for Claim 4 prior to filing this action. Smith's administrative appeal concerning that claim was not decided until June 16, 2023.
>
> Furthermore, the record before the Court reflects that prior to filing the action, Smith had not exhausted his administrative remedies against Officer Moody, Sgt. Barnes, and Lt. Williams, who have not made an appearance in this action. Thus, all the remaining claims in this action are subject to dismissal for failure to comply with 42 U.S.C. § 1997e(a).

*Id.* at 3–4. The Court directed Smith, within twenty-one days of the date of entry thereof, to show good cause as to why all claims should not be dismissed for lack of exhaustion. *Id.* at 4. Smith responded. ECF No. 65. For the reasons that follow, the Motion for Summary Judgment will be GRANTED, and Smith's claims will be DISMISSED for lack of exhaustion.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings,

---

[3] Smith indicates the action was mailed to the Court on May 5, 2023. ECF No. 56-3, at 26. The United States Court of Appeals for the Fourth Circuit has pronounced that an action by a *pro se* prisoner is deemed filed as of the date it was mailed to the Court. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991).

depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

Defendants ask the Court to dismiss Claims 1, 2, 3, and 8 because Smith failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of the Motion for Summary Judgment, Defendants submitted the following: the affidavit of L. Delbridge (ECF No. 42-1, at 1–7); VDOC Operating Procedure 866.1, Offender Grievance Procedure ("Operating Procedure § 866.1," *id.* at 8–24); the declaration of M. Engelke, the Director of Food Services for the Virginia Department of Corrections ("VDOC") (ECF No. 42-2); the supplemental declaration of M. Engelke (ECF No. 56-1, at 1–3); the declaration of N. Gregg, the Eastern Regional Dietician for the VDOC (ECF 56-2); the declaration of C. Sherrill, the Institutional Ombudsman for Deerfield Correctional Center ("DCC") (ECF No. 56-3, at 1–9); and, Smith's grievance material (ECF No. 42-1, at 73–86; ECF No. 56-1, at 4–9); ECF No. 56-3, at 10–37). In response, Smith submitted copies of some of his grievance material. *See* ECF No. 63-1.

In light of the foregoing principles and submissions, the facts set forth below are established for the purposes of the pending Motion for Summary Judgment. All permissible inferences are drawn in favor of Smith.

## III.  FACTS PERTAINING TO EXHAUSTION

A.     **Grievance Procedure at the VDOC**

Operating Procedure § 866.1 requires that, before submitting a Regular Grievance, the inmate must demonstrate that he or she attempted to resolve the issue through the informal complaint process.  *See* Operating Procedure at § 866.1.I.D.1–4.  "The first step in in the informal complaint process is for the offender to discuss their issue with staff for a quick resolution." *Id*. at § 866.1.I.D.1.  If the issue is not resolved verbally, the offender should submit a Written Complaint*. Id.* at § 866.1.I.D.2.  Prison staff have fifteen days from receipt of the Written Complaint to provide an appropriate written response. *Id.* at § 866.1.II.B.4.  "If the issue on the Written Complaint is not resolved to the satisfaction of the inmate, or staff fail to provide a written response within 15 days, the inmate may file a Regular Grievance . . . .  The Regular Grievance must be placed in the Grievance Mailbox within 30 days of the original incident unless a more restrictive timeframe applies." *Id.* at § 866.1.I.D.4

1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance.  *Id.* at § 866.1.III.C.3&4. "If the Regular Grievance does not meet the intake criteria, staff has two working days from receipt to complete the Intake section of the Regular Grievance [form], indicating the reason for rejection, and to return the Regular Grievance to the offender." *Id.* at § 866.1.III.C.5.  "If the offender disagrees with the intake decision, the offender has five days to appeal the decision." *Id.* at § 866.1.III.C.6.

Regardless of the outcome of the appeal of the intake decision, an inmate remains free to resubmit the Regular Grievance and correct the reason it was rejected at intake. ECF No. 56-3, at 4–5, 7.

2. Grievance Review

"If the Regular Grievance meets the intake criteria, staff must accept the grievance and log it into VACORIS using the received date. Within two working days, designated staff must print and provide the Grievance Receipt to the offender as notification of acceptance." Operating Procedure at § 866.1.III.C.4. Once the grievance is accepted for review, the Institutional Ombudsman determines the proper course of investigation. *Id.* at § 866.1.III.D.1. "Within 30 days of issuance of the Grievance Receipt, each accepted grievance must be investigated, reviewed, completed, and the Offender Grievance Response – Level I returned to the inmate unless a continuance is authorized." *Id.* at § 866.1.III.F.2.(b).

3. Grievance Appeals

"The Offender Grievance Response – Level I includes a section for the offender to appeal their grievance response." *Id.* at § 866.1.IV.A. The appeal must be submitted within five days of *receipt* of the Offender Grievance Response. *Id.* at § 866.1.IV.B.2 (emphasis added). The appeal must contain the following: (1) "what piece (the response, the disposition, or the remedy) is being appealed;" (2) how the determination did not address the issue; (3) a suggested remedy; (4) a signature and a date of "the appeal section on the Offender Grievance Response – Level I." *See id.* § 866.1.IV.B.1. Depending on the issue in the grievance, the appeal is addressed by the Director of Offender Management Services, the Health Services Director, the Superintendent for Education, the Chief of Corrections Operations, or the Regional Administrator. *See id.* at § 866.1.IV.C.1.a–e.

"The exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process and appealed without satisfactory resolution." *Id.* at § 866.1.V.B.

**B. Smith's Efforts at Exhaustion**

1. <u>Smith's Properly Submitted Grievances</u>

    a. *November 18, 2022 Grievance*

On November 18, 2022, Smith submitted a Grievance wherein he complained:

> When I am required to sit in the dining room, I am unable to eat. I am on a strict Kosher diet and the raw vegetables that I receive as part of my diet can not be prepared in the dining area. On tuna days the tuna can not be put on the tray because it is spiritually unclean. The sporks are unclean, the cup is unclean, and there are no provisions to wash off anything that touches the trays. I am unable to eat.

ECF No. 42-1, at 74.[4] Smith requested that he be allowed to remove the Kosher trays "from the dining area or allow inmates to bring their own dishes, cups, and utensils that are spiritually clean." *Id.*

On December 22, 2022, Assistant Warden Oates responded and stated:

> An investigation into your complaint indicates that in accordance with Warden Miller's Memo date October 28, 2022, effective November 1, 2022, Deerfield Correctional Complex (Main) resumed feeding in the inmate dining halls. Since that time, inmates housed in the last pod called during the lunch feeding time and are on the Kosher Diet have been permitted to take their meals to their assigned housing unit to properly prepare and consume their food.
>
> . . . .
>
> After thoroughly reviewing the information presented by staff in response to your complaint and the Executive Memo issued by Warden, I find your grievance to be UNFOUNDED.

---

[4] On November 2, 2022, Smith had submitted a Written Complaint, wherein he complained that the "Jewish people on the Kosher diet [were] not allowed to eat. We [were] given unprepared food due to the nature of the diet and can not eat it in the dining area because there is no way to prepare it until we get back to the pod. . . ." ECF No. 42-1, at 73. Prison staff responded, "Inmate Smith, food service don't make the decision about eating in the dining hall." *Id.*

7

*Id.* at 75.

Critically, for purposes of the exhaustion requirement, Smith failed to appeal the denial of this grievance. *Id.*

### b. June 2, 2023 Grievance

On May 2, 2023, Smith submitted a Grievance wherein he complained that "[t]he cheese served during Passover is not Kosher for Passover." ECF No. 56-1, at 5.[5] On May 10, 2023, Oates, the Assistant Warden, responded: "the food service department received the proper documentation in reference for the cheese being in compliance for Passover. No one was in violation. An investigation into your complaint reveals that the response to the written complaint was correct. The kitchen served Kosher cheese for Passover." *Id.* at 6. Smith appealed that decision. *Id.* at 7. On June 16, 2023, the Regional Administrator responded, and concluded:

> An investigation into your claims revealed evidence to overturn the ruling of the Level I respondent. The Kosher letter for the cheese showed that it was Kosher for Passover by the company that manufactured the cheese. The Virginia Department of Corrections Production Facility made a mistake and did not have the Rabbi present when the cheese was packaged.
>
> This was discovered a couple of days before Passover. There were not enough supplies and/or time to produce the product; therefore this cheese was served [for] Passover.
>
> . . . .
>
> Based on the information provided, I am overturning the decision of the Level I respondent . . . .

(*Id.*)

---

[5] On April 8, 2023, Smith submitted a Written Complaint related to this issue and received a response on April 24, 2023. ECF No. 56-1, at 4.

Although Smith exhausted the issues raised in this grievance, he failed to do so before filing this action on June 5, 2023.[6]

2. Smith's Improperly Filed Grievances

    *a. April 20, 2023 Grievance*

Smith submitted a grievance, which was rejected on April 20, 2023, wherein he complained,

> The Complaint was not sent to the right person. I specified the Warden. The complaint came back with the first handwritten page missing. Ms. Oseghale's response is completely incorrect. The kitch[en] has not been certified Kosher. The trays, sporks, cups, fruits, vegetables are spiritually unclean per Kosher law as I explained in the missing pages of the complaint. Before the pandemic the sealed diets were delivered to the pods for that very reason.

ECF No. 56-3, at 10. Relying on the underlined language, this Grievance was rejected at intake because the "issue submitted on this grievance is not the same issue addressed in your Written Complaint . . . ." *Id.* at 11.[7]

Smith appealed. *Id.* at 12. Smith, however, did not challenge the propriety of the intake decision. *Id.* Instead, Smith continued to argue the substance of his grievance. *Id.* at 12, 14–19. On May 8, 2023, the Regional Ombudsman upheld the intake decision. *Id.* at 11.

---

[6] *See* footnote 3.

[7] In the Written Complaint attached to that Grievance, which was directed to the Warden, Smith wrote:

> I don't know why this issue keeps coming up. The sealed diets can not [be] eaten in the dining hall. There are no provisions to wash the items (raw vegetables, milk packs, juice packs, fruits) and the kitchen is not allowed to wash them because they are spiritually unclean. The cups in the dining hall are unclean. The sporks are unclean. There is no provision for preparing the raw . . . .

ECF No. 56-3, at 13. Someone in Food Services, instead of the Warden, responded and assured Smith the food and food preparation process was proper for religious diets. *Id.*

9

### b. May 3, 2023 Grievance

On or about April 14, 2023, Smith submitted a Written Complaint wherein he complained:

> The Jewish people who adhere to their faith are being denied their religious rights under the Constitution  The D.O.C. is required by law to follow Kosher law. (Next Page) [sic]

ECF No. 56-3, at 20.  On May 2, 2023, J. Harris responded:

> There is no evidence to support this claim.  The East Side dining hall where sealed religious meals are served is purified in accordance with policy.

*Id.*

On May 3, 2023, Smith submitted a grievance wherein he complained:

> The answer is absolutely false.  Policy or not, it's against the law to deny me my Free Exercise of my religion.  I made the issue clear.  Now we are one step closer to a civil suit.  I can also add J. Harris to the list of defendants as well as every officer who has denied me my religious rights under the law.

*Id.* at 24.  For his suggested remedy, Smith stated:

> Allow me to exercise my right to free exercise of my religion and either deliver the said diets to the pod or allow me to carry it back to the pod to properly prepare it in accordance with Kosher law.

*Id.*  On May 4, 2023, this Grievance was rejected at intake, because the issue he submitted was deemed not to be the same as the issue address in the Written Complaint. *Id.* at 25.

### c. May 5, 2023 Grievance

On April 20, 2023, Smith submitted a *Written Complaint* wherein he complained:

> The "To:" section of my Written Complaint  DCC-23-INF-00795 was ignored by the grievance coordinator and was sent to someone who had no authority to make a decision.

*Id.* at 28.  On May 3, 2023, DeBerry responded:

>Mr. Smith, per OP 866.1 the Grievance Coordinator assigns complaints to [the] staff member who can provide the best answer and has knowledge of situation.

*Id.*

On May 5, 2023, Smith submitted a Grievance wherein he stated:

>On the complaint in question DeBerry sent it to someone who has no authority to make a decision on the issue. Then, this complaint against DeBerry should not have been handled by DeBerry, that is against O.P. and again she ignored the "To:" section. This is also a clear violation of the 1st Amendment and the right to grieve the government. This fact has been added to the lawsuit mailed today 5/5/23 and DeBerry is now a defendant.

*Id.* at 26.

This Grievance was rejected at intake because Smith failed to explain how this issue caused him personal harm or loss. *Id.* at 27. Smith appealed that intake decision. *Id.* On May 15, 2023, the Regional Ombudsman upheld that intake decision. *Id.*

>### d. May 23, 2023 Grievance

On May 8, 2023, Smith submitted a four-page Written Complaint wherein he complained that the dining facilities at DCC failed to accommodate his religious diet. *Id.* at 32–36. On May 23, 2023, J. DeBerry responded and assured him that the facilities at DCC were adequate. *Id.* at 32.

On May 23, 2023, Smith submitted another Grievance complaining about DeBerry handling his grievance. *Id.* at 30. Specifically, Smith stated: "Again, the complaint was not sent to anyone with authority to make a decision. J. DeBerry did not read the attached pages . . . ." *Id.* On May 25, 2023, the Grievance was rejected at intake because it was not the same as the issue addressed in the Written Complaint. *Id.* at 31.

11

## IV. ANALYSIS

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Smith's efforts at exhaustion were incomplete, premature, and/or not properly filed. First, although the November 22, 2022 Grievance was properly filed, it failed to exhaust any of Smith's claims because he failed to appeal the denial of that Grievance. *See Woodford*, 548 U.S. at 90 (requiring litigants to use all available levels of appeal in order to satisfy the exhaustion requirement).

Smith's remaining efforts at exhaustion were premature and/or not filed in accordance with the relevant prison rules. "Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court . . . . If exhaustion was not completed at the time of filing, dismissal is mandatory." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). "[E]xhaustion pendente lite undermines the objectives of section 1997e(a) and . . . the language of section 1997e(a) clearly contemplates exhaustion prior to the commencement of the action as an indispensable requirement, thus requiring outright dismissal of such actions . . . ." *Id.* at 628 (citing *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002); *Medina–Claudio v. Rodriguez–Mateo*, 292 F.3d 31, 36 (1st Cir. 2002); *Neal v. Goord*, 267 F.3d 116, 121–22 (2d Cir. 2001); *Jackson v. Dist. of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 538 (7th Cir. 1999)).

Smith indicates the action was mailed to the Court on May 5, 2023. ECF No. 56-3, at 26.[8] The United States Court of Appeals for the Fourth Circuit has concluded that an action by a *pro se* prisoner is deemed filed as of the date it was mailed to the Court. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991). Therefore, the action is deemed filed as of May 5, 2023. Smith failed to properly file any grievance pertaining to his present claims and pursue it through all levels of appeal prior to May 5, 2023.[9] Accordingly, all of Smith's claims will be DISMISSED WITHOUT PREJUDICE as unexhausted.

---

[8] Smith's action was filed at the latest on May 10, 2023, the date it was received by the Court. ECF No. 1. Smith also failed to exhaust any of his claims by that date.

[9] Furthermore, when as here, "'refiling' an initially defective grievance 'was available to [an inmate, the inmate's] failure to exhaust is not excusable.'" *Nelson v. Ellis*, No. 3:20CV803, 2023 WL 2226790, at *8 (E.D. Va. Feb. 24, 2023) (quoting *Haywood v. Baylor*, 804 F. App'x 401, 403 (7th Cir. 2020)); *accord Wall v. Stevens*, No. 7:16–CV–00373, 2019 WL 1371858, at *4 (W.D. Va. Mar. 26, 2019), *aff'd*, 775 F. App'x 761 (4th Cir. 2019); *see Woodford*, 548 U.S. at

## V.  CONCLUSION

Smith's claims will be DISMISSED.  The Motion for Summary Judgment (ECF No. 55) will be GRANTED.  The action will be DISMISSED.

An appropriate Final Order will accompany this Memorandum Opinion.

                                                                   /s/
                                                 Roderick C. Young

Date:  January 13, 2026                              United States District Judge
Richmond, Virginia

---

90 (emphasis added) (internal quotation marks omitted) (emphasizing that proper exhaustion entails "using *all* steps that the agency holds out").